In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 21-2548, 21-2549, & 21-2560

ACCIDENT FUND INSURANCE CO. OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CUSTOM MECHANICAL CONSTRUCTION, INC.,

*Defendant-Appellant,*

and

LIBERTY MUTUAL INSURANCE CO.,

*Intervenor-Appellant,*

and

SCHULTHEIS INSURANCE AGENCY, INC. and
JAMES LEE SUBLETT,

*Third-Party Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:16-cv-00251 — **Richard L. Young**, *Judge.*

_____

ARGUED SEPTEMBER 8, 2022 — DECIDED SEPTEMBER 27, 2022

_____

Before WOOD, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Danny Cope was injured on a job site in Kentucky and filed a workers' compensation claim. The subcontractor who hired him for the project, Custom Mechanical Construction, Inc. ("CMC"), is based in southern Indiana and had an insurance policy with Accident Fund Insurance Co. of America ("AFICA") at the time of the accident. Schultheis Insurance Agency and Lee Sublett (collectively, "Schultheis") procured the policy for CMC, but Schultheis failed to inform AFICA that CMC did business in Kentucky.

AFICA filed suit in federal court, seeking a declaration that its policy does not cover Cope's claim. The district court granted summary judgment in favor of AFICA and entered partial final judgment under Fed. R. Civ. P. 54(b). The dispositive question in this appeal is whether CMC's insurance policy with AFICA covers workers' compensation claims for workers who are injured outside of Indiana. Because CMC indisputably never notified AFICA that it had work (or began work) in Kentucky, we affirm.

## I. Background

### A. Factual Background

CMC is a mechanical contractor incorporated in Indiana with its principal place of business in Evansville, Indiana. Although most of its jobs are in Indiana, CMC has been registered to do business in Kentucky since 2009. CMC contracted with Schultheis to procure insurance coverage on its behalf.

Lee Sublett, one of Schultheis's agents, has worked with CMC since it opened in 2005. Sublett claims he was not aware that CMC performed work in Kentucky until the accident at the center of this litigation, but it is undisputed that CMC completed jobs in Kentucky over the years.

Prior to 2015, CMC had a workers' compensation policy with Midwestern Insurance Alliance ("Midwestern"). The Midwestern policy provided two types of coverage: "primary coverage" for Indiana, and "other states coverage" for temporary or incidental work performed in other states. In 2015, when the Midwestern policy was up for renewal, Sublett obtained quotes from Midwestern and AFICA. CMC decided to switch to AFICA, and Sublett prepared an application. In response to the question, "Do employees travel out of state?" Sublett wrote "no." AFICA issued a policy (the "First Policy") for workers' compensation coverage between October 24, 2015, and October 24, 2016.

On May 13, 2016, CMC's original owners sold the company to new owners. The new owners were aware that CMC performed work in Kentucky, and they met with Sublett to discuss CMC's insurance needs prior to taking over. Sublett notified AFICA of the change in ownership, and AFICA informed him that its practice was to issue a new policy instead of transferring the old policy. On June 1, 2016, when Sublett prepared an application for a new policy, he again responded "no" when asked if CMC's employees travel out of state. AFICA issued a short-term policy that day (the "Second Policy") and backdated it from June 1 to May 13. The Second Policy, like the First Policy, was scheduled to end on October 24, 2016.

Other than the change in ownership, the First and Second Policies are functionally the same. Both provide primary coverage in Indiana and other states coverage—subject to certain notice requirements. On the "Information Page" of the Second Policy, Item 3 ("Coverage") states in relevant part:

A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here: IN

   ...

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here: All states and U.S. territories except monopolistic states, Puerto Rico, the U.S. Virgin Islands, and states designated in Item 3.A. of the Information Page.

The crux of this suit is the proper interpretation of the Second Policy's other states coverage. Part Three provides:

A. How This Insurance Applies

   1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

   2. If you *begin work* in any of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3.  We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4.  If you *have work* on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state *unless we are notified within thirty days*.

B.  Notice

Tell us *at once* if you *begin work* in any state listed in Item 3.C. of the Information Page.

(emphases added).

On October 16, 2016, Danny Cope was working on a CMC job site in Kentucky when he fell and suffered serious injuries. CMC hired Cope along with other Kentucky union members to work on a job known as "the Pilgrim's Pride project." Sublett reported the claim to AFICA the next day, and AFICA began investigating the incident. On November 11, AFICA denied coverage because CMC failed to notify AFICA of its work in Kentucky. During 2016, CMC worked on twelve different jobs in Kentucky—in May, June, July, August, September, and October. All of those jobs were performed with Indiana workers except for the Pilgrim's Pride project. That project involved Kentucky workers from the local union hall.

**B. Procedural Background**

AFICA sued CMC and Cope in the Southern District of Indiana, seeking a declaratory judgment that the Second Policy does not provide coverage for Cope's accident.[1] CMC filed counterclaims for breach of contract and bad-faith denial of coverage. CMC also filed a third-party complaint against Schultheis and Sublett, alleging they negligently failed to procure adequate insurance coverage and failed to properly advise CMC.[2] All parties filed cross-motions for summary judgment. Liberty Mutual Insurance Co. intervened because, if CMC does not have adequate coverage, Liberty Mutual may be liable as the insurer for the general contractor that oversaw the Pilgrim's Pride project.

The district court granted summary judgment in favor of AFICA and against CMC, Cope, and Liberty Mutual. First, the court concluded that the Second Policy's primary coverage did not apply because the accident occurred in Kentucky, not Indiana. (No one disputes this conclusion on appeal.) Second, the court held that the Policy's other states coverage also did not apply because CMC failed to notify AFICA prior to the accident that it performed work in Kentucky. The court reasoned that Part Three's section A.2 did not apply because CMC did not inform AFICA "at once" that it had begun work in Kentucky, as required by section B. Similarly, section A.4 did not apply because CMC "had work" in Kentucky on the

---

[1] The parties are diverse (AFICA is a citizen of Michigan, CMC is a citizen of Indiana, and Cope is a citizen of Kentucky), and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

[2] Schultheis is an Indiana corporation, but the district court had supplemental jurisdiction over the third-party claims. *See* 28 U.S.C. § 1367.

effective date of the policy (May 13, 2016), but it failed to notify AFICA within thirty days. The district court rejected many of the arguments that CMC reprises on appeal, noting: "[T]he problem is not that Custom Mechanical provided notice late; the problem is that it *never* provided notice." *Accident Fund Ins. Co. of Am. v. Custom Mech. Constr., Inc.*, 504 F. Supp. 3d 913, 923 (S.D. Ind. 2020). The court therefore rejected CMC's counterclaims for breach of contract and bad-faith denial of coverage.

Although the district court granted summary judgment in AFICA's favor as to the proper interpretation of the Policy, disputed facts precluded summary judgment as to CMC's third-party claims against Schultheis. The court granted the parties' joint request for partial final judgment under Fed. R. Civ. P. 54(b), and this appeal followed.

## II. Discussion

We review de novo the district court's grant of summary judgment. *Legend's Creek Homeowners Ass'n, Inc. v. Travelers Indem. Co. of Am.*, 33 F.4th 932, 934 (7th Cir. 2022). Summary judgment is appropriate if the moving party shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Where, as here, the case comes to us from a decision on cross-motions for summary judgment, we review the evidence and draw all reasonable inferences 'in favor of the party against whom the motion under consideration [was] made.'" *N.J. ex rel. Jacob v. Sonnabend*, 37 F.4th 412, 420 (7th Cir. 2022) (quoting *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015)). "Proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment." *USA Gymnastics v.*

*Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 512 (7th Cir. 2022) (quoting *Am. Home Assur. Co. v. Allen*, 814 N.E.2d 662, 666 (Ind. Ct. App. 2004)).

The parties agree that Indiana law applies to this diversity suit. "Under Indiana law, insurance policies are interpreted 'from the perspective of an ordinary policyholder of average intelligence.'" *USA Gymnastics*, 27 F.4th at 511 (quoting *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009)). "Although special rules of construction have developed for interpreting insurance policies as a result of the disparity in bargaining power between insurers and insureds, insurance contracts are generally governed by the same rules of construction as other contracts." *USA Gymnastics*, 27 F.4th at 511 (quoting *Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1012 (Ind. 2010)). "[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning," but "where policy language is ambiguous, it is to be construed strictly against the insurer and in favor of the insured." *Taylor*, 926 N.E.2d at 1012. "Ambiguity exists when a policy is susceptible to two or more reasonable interpretations." *Id*. (citing *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002)). In other words, "an insurance policy will be found to be ambiguous in cases where reasonable people would differ as to the meaning of its terms." *Taylor*, 926 N.E.2d. at 1013. At the same time, "[t]he fact that the parties disagree over the meaning of the contract does not, in and of itself, establish an ambiguity." *Id*.

We begin by addressing whether Schultheis has standing to join this appeal, even though the district court did not enter partial final judgment against it. We then turn to the interpretation of CMC's insurance policy with AFICA.

## A. Schultheis's Standing to Appeal

The district court entered partial final judgment in favor of AFICA and against CMC, Cope, and Liberty Mutual pursuant to Rule 54(b). CMC's third-party claims against Schultheis (for negligent procurement and failure to advise) could not be resolved on summary judgment, so those claims remain pending in the district court. Schultheis nonetheless seeks to join this appeal because it believes AFICA's policy provides coverage for Cope's workers' compensation claim. If Schultheis is correct, then it will have a complete defense against CMC's negligence claims. For its part, AFICA does not dispute that Schultheis has standing to appeal.

Even though Schultheis was not bound to the Rule 54(b) judgment, we conclude it has a sufficient stake in the resolution of this declaratory judgment action to participate in this appeal. Standing to appeal "requires an injury caused by the judgment rather than injury caused by the underlying facts." *Wachovia Sec., LLC v. Loop Corp.*, 726 F.3d 899, 907 (7th Cir. 2013) (internal quotation marks omitted). Ordinarily, courts of appeals "lack authority to consider an appeal from a party not subject to the order sought to be challenged." *Fischer v. Magyar Államvasutak Zrt.*, 892 F.3d 915, 916 (7th Cir. 2018); *see also Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1274 (10th Cir. 2011) (Gorsuch, J.) ("[I]t is usually only parties who are sufficiently aggrieved by a district court's decision that they possess Article III and prudential standing to be able to pursue an appeal of it."). But as a third-party defendant, Schultheis was injured by the district court's no-coverage determination in favor of AFICA. *See* Fed. R. Civ. P. 14(a)(2)(C) (third-party defendants "may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim").

Nonparties who are affected by a judgment may appeal "if the would-be appellant can show significant involvement with the judgment, … a risk that its interests will not be adequately protected by the parties, and a lack of untoward interference in the affairs of the parties." 15A Charles Alan Wright & Edward H. Cooper, *Federal Practice & Procedure* § 3902.1 (2d ed. 2022). Schultheis satisfies these criteria: it was significantly involved in the litigation below; its interests may not be adequately protected by CMC (which is agnostic as to whether AFICA, Schultheis, or Liberty Mutual pays Cope's workers' compensation claim); and allowing Schultheis to appeal jointly with CMC and Liberty Mutual will not unduly interfere with our resolution of the merits. *See also Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 738 n.1 (5th Cir. 1980) (holding that a "third-party defendant can assert on appeal errors in the main case"); *United States v. Lumbermens Mut. Cas. Co.*, 917 F.2d 654, 658 n.5 (1st Cir. 1990). Given the nature of Schultheis's primary defense to CMC's third-party claims, it follows that Schultheis has standing to join this appeal.

## B. The AFICA Policy Does Not Cover Cope's Workers' Compensation Claim

The plain text of the Second Policy is unambiguous: because CMC failed to notify AFICA until after Cope's accident that it was working in Kentucky, AFICA is not liable for Cope's workers' compensation claim. As explained below, the Appellants' attempts to circumvent this result are unpersuasive.

### 1.  Section A.2 Does Not Provide Coverage

To recap, Part Three, section A.2 provides: "If you *begin work* in [states other than Indiana] after [May 13, 2016] … , all

provisions of the policy will apply ….” The Appellants argue that this provision means AFICA will cover claims for workers’ compensation in other states, regardless of whether CMC provides notice of such work. As the district court observed, however, section A.2 cannot be read in isolation. Section B provides: “Tell us *at once* if you *begin work* in any state listed in Item 3.C. of the Information Page.” (emphasis added). Setting aside whether the meaning of “at once” is ambiguous, it is undisputed that CMC never notified AFICA that it was performing work in Kentucky until after the Cope accident.

If the Appellants had their way and notice was not required in order for “other states coverage” to apply, then AFICA would be on the hook for claims in any state at any time. That is not a sensible way to read the Policy, which identifies just one state, Indiana, as the “primary coverage” state. Notice is a condition precedent to coverage in another state. *See Koransky, Bouwer & Poracky P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 342 (7th Cir. 2013) (“[An insurance policy’s] notice requirement … ‘defines the limits of the insurer’s obligation.’”) (quoting *Paint Shuttle, Inc. v. Cont’l Cas. Co.*, 733 N.E.2d 513, 522 (Ind. Ct. App. 2000)); *see also Ashby v. Bar Plan Mut. Ins. Co.*, 949 N.E.2d 307, 312 (Ind. 2011).

Perhaps recognizing that they have a notice problem, the Appellants contend that Sublett was acting as an agent of AFICA (not CMC), and therefore his knowledge of CMC’s work in Kentucky should be imputed to AFICA. The Appellants concede that Sublett denies knowing of CMC’s work in Kentucky before the accident, but supposedly this factual dispute is sufficient to proceed to trial. It may be true that, under Indiana law, “[a]n intermediary in the insurance business is the agent of the insured while shopping for a policy, and the

agent of the insurer after a policy issues." *Fid. & Cas. Co. of N.Y. v. Tillman Corp.*, 112 F.3d 302, 304 (7th Cir. 1997). That does not mean, however, that an insurance *broker* automatically becomes an agent of the insurer. *See id*. at 304–06 (explaining that "[a]gency is a voluntary relation" and a customer's insurance broker was not acting as an insurer's agent when it applied to Indiana's assigned-risk pool on the customer's behalf).

The Indiana Supreme Court has clarified that there is an important distinction between an insurance broker, who acts as an agent of the insured, and an insurance agent, who represents an insurer under an employment agreement. *Est. of Mintz v. Conn. Gen. Life Ins. Co.*, 905 N.E.2d 994, 1001 (Ind. 2009). While the "acts of an [insurance] agent are imputable to the insurer," a broker's actions are not. *Id*. In an opinion resolving AFICA's motion to dismiss CMC's counterclaims, the district court concluded CMC failed to allege sufficient facts that Schultheis was acting as AFICA's agent. The Appellants did not challenge that decision in their opening brief on appeal, so even if this argument had merit, we would deem it waived. *See, e.g.*, *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020) ("arguments raised for the first time in a reply brief are waived").

### 2. *Section A.4 Does Not Provide Coverage*

The Appellants fare no better under section A.4, which provides: "If you *have work* on the effective date of this policy in any state [other than Indiana], coverage will not be afforded for that state *unless we are notified within thirty days*." (emphasis added). One of the new owners conceded during his deposition that CMC was working on a project in Kentucky on May 13, 2016—the effective date of the Second

Policy. In its counterclaim against Schultheis, CMC even alleged that Schultheis "was aware, or should have been aware that CMC consistently worked on projects in Kentucky." And CMC's Answer to AFICA's complaint admitted that "CMC was performing work in Kentucky prior to May 13, 2016," but ironically blamed AFICA for failing to incorporate that fact into the Second Policy.[3] In short, CMC cannot seriously dispute that it had work in Kentucky on the effective date of the policy.

Well over thirty days passed between May 13 and October 17, when CMC filed a claim for Cope's accident. The fact that the new owners failed to read the policy, and therefore were unaware of the notice requirement, is irrelevant. *See Ohio Cas. Ins. Co. v. Rynearson*, 507 F.2d 573, 577 (7th Cir. 1974) ("[A]lthough late notice has been excused where the insured was unaware of the existence of a policy, … it is not excused where the insured alleges that he was unaware of coverage simply because he failed to read his policy.") (citing *Metro. Life Ins. Co. v. Peoples Trust Co.*, 98 N.E. 513, 515 (Ind. 1912)); *see also* 27 Williston on Contracts § 70:114 (4th ed. 2022) ("One who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them.").

Undeterred, the Appellants argue that CMC did not really "have work" in Kentucky until October 2016 because the

---

[3] The Appellants go so far as to argue that "AFICA's own workers' compensation audit failed to reveal 'ongoing' work in Kentucky prior to the [Second] Policy." But the policy plainly puts the burden on the insured to notify the insurer that it is performing work in another state.

Pilgrim's Pride project was the only CMC project in 2016 that employed Kentucky-based workers. Yet nothing in the Policy indicates that the residency of CMC's workers affects the coverage analysis. The only relevant factors are the time work begins (relative to the effective date of the Policy), the state where the work is performed, and whether CMC provided notice. CMC had work in Kentucky months before the accident, yet it failed to notify AFICA until October 17, 2016.

The Appellants make much of the fact that AFICA backdated coverage of the Second Policy from June 1 to May 13. But as AFICA notes, Schultheis requested backdating on behalf of CMC due to the change in ownership. AFICA had no incentive to backdate the policy maliciously months before the accident, precisely because it was unaware that CMC was working on projects in Kentucky. The Appellants' strongest argument, perhaps, is that "CMC's Kentucky work has always been sporadic, and made up less than 5% of its total work." Even so, the Second Policy does not condition the notice requirement on the sporadic nature of an insured's work in another state. It simply says: "If you *have work* on the effective date of this policy in any state [other than Indiana], coverage will not be afforded for that state *unless we are notified within thirty days*." In light of CMC's own admissions and the fact that CMC has been registered to do business in Kentucky since 2009, the Policy's notice requirement applied.

Finally, because the plain language of the Policy precludes coverage under section A.4, the court will not consider the Appellants' extrinsic evidence to the contrary. *See Vesuvius USA Corp. v. Am. Com. Lines LLC*, 910 F.3d 331, 333 (7th Cir. 2018) (applying Indiana law) ("Clear and unambiguous terms in a contract are deemed conclusive, and we will not construe

an unambiguous contract or look to extrinsic evidence, but will merely apply the contractual provisions.").

### III. Conclusion

For the foregoing reasons, the district court's partial final judgment in favor of AFICA is

AFFIRMED.