In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1160

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEREMY OUTLAND,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:17-cr-30073 — **Sue E. Myerscough**, *Judge.*

ARGUED JANUARY 22, 2021 — DECIDED APRIL 14, 2021

Before RIPPLE, KANNE, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Shortly after police arrested him for suspected drug dealing, Jeremy Outland overdosed on heroin and fell unconscious. The officers brought Outland to a local hospital where, after receiving care, he agreed to talk to the police, received *Miranda* warnings, and made several incriminating statements which led to federal charges for distributing heroin. Outland moved to suppress his statements, arguing that he was in no condition at the hospital either to

knowingly and intelligently waive his *Miranda* rights or to otherwise give voluntary statements to the police.

The district court denied Outland's motion, finding that his statements were voluntary. At no point, though, did the district court analyze or answer whether Outland knowingly and intelligently waived his *Miranda* rights. The questions are not one and the same: to the contrary, whether a defendant knowingly and intelligently waived his rights at the outset of a police interview is a distinct and separate inquiry from whether, in the circumstances of the interview as a whole, the defendant's statements were voluntary. Given that Outland was unconscious and entirely incapacitated from an overdose just two hours before police questioned him, a finding on the former question matters. We therefore remand for the district court to make a determination on the validity of Outland's *Miranda* waiver in the first instance.

## I

### A

Hoping to stem the swelling tide of heroin use in Springfield, Illinois, the city's police department opened an investigation in 2017 to root out heroin traffickers. As part of this investigation, police arrested Jeremy Outland mid-morning in November 2017 for selling heroin. The officers placed Outland in a squad car and planned to bring him to the local Drug Enforcement Agency office for questioning. But on the way, and somehow while handcuffed, Outland consumed what he claimed was 3.5 grams of heroin he managed to hide from the police. One of the officers then noticed that Outland had collapsed in the back seat, observed a white powder covering his face and jacket, and rerouted to a nearby emergency room.

Outland was unresponsive upon arrival at 10:44 a.m., requiring doctors to administer multiple medications to treat the heroin overdose.

Outland regained consciousness around 10:51 a.m. but fell back into an unresponsive state around 11:10 a.m. and again around 11:20 a.m. despite receiving additional doses of medication in the intervals. He then experienced several apneic episodes where he would temporarily stop breathing while asleep. Eventually doctors placed Outland on a continuous medication drip at 12:25 p.m. and made plans to transfer him to the intensive care unit.

Around 1:00 p.m.—slightly over two hours after Outland first arrived unconscious in the ER—Daniel Weiss, a narcotics officer with the Springfield Police Department, came to the hospital to speak with Outland. Officer Weiss began by reading *Miranda* warnings and Outland agreed to talk. Over the span of a 45-minute interview, Outland made several incriminating statements about his heroin dealing between Chicago and Springfield.

B

Federal charges followed for distributing and conspiring to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)–(C), 846. Outland later moved to suppress the statements he made to Officer Weiss as well as other evidence obtained by police not relevant to his appeal. Outland advanced the twofold contention that he "was so intoxicated as to render his statement involuntary" and that "he was unable to voluntarily and knowingly waive his *Miranda* rights based upon a long list of medications he was under at the time." In the argument section of his motion,

Outland similarly contended that "[w]here the evidence plainly shows that a suspect is so grossly intoxicated that he no longer has the capacity to knowingly waive his rights, suppression of any resulting statement is warranted."

The district court held an evidentiary hearing, received testimony from Officer Weiss, Outland, and a DEA agent, and ultimately issued an order denying Outland's motion. In the course of its ruling, the district court summarized Outland's testimony that he did not recall waiving his rights and was under the influence of drugs during the interview. The court also recounted Officer Weiss's contrary impressions of Outland's mental state—that Outland was coherent, had requested to speak with law enforcement, and, despite appearing under the influence of heroin, never lost consciousness during the interview.

Yet the district court made no determination that Outland knowingly and intelligently waived his *Miranda* rights at the outset of his interview with Officer Weiss. The court instead disposed of the motion by focusing exclusively on the voluntariness of the statements. In a very brief analysis, spanning just over a page, the court underscored that it found no evidence of police coercion during the interview and that it credited Officer Weiss's testimony that Outland had asked to speak with law enforcement—a fact tending to show voluntariness. The court concluded that, regardless of whether Outland was intoxicated from heroin or hospital-administered medication, his statements were voluntary.

Having failed to suppress any of the government's evidence against him, Outland entered a conditional guilty plea to both counts in the indictment but reserved the right to appeal the denial of his suppression motion. The district court

imposed a below-guidelines sentence of 108 months followed by four years of supervised release.

Outland now appeals the district court's denial of his suppression motion.

## II

### A

We review a district court's denial of a motion to suppress under a dual standard, assessing conclusions of law *de novo* and evaluating factual findings for clear error with special deference granted to the court's credibility determinations. See *United States v. Nichols*, 847 F.3d 851, 856–57 (7th Cir. 2017).

A defendant's challenge to the admission of statements made during a custodial interrogation presents two separate questions: whether he received and validly waived his *Miranda* rights, and whether his statements themselves were voluntary. See *Missouri v. Seibert*, 542 U.S. 600, 608–09 (2004); *Dickerson v. United States*, 530 U.S. 428, 444 (2000) ("The requirement that *Miranda* warnings be given does not, of course, dispense with the voluntariness inquiry."); *Henderson v. De-Tella*, 97 F.3d 942, 946 (7th Cir. 1996).

The first question stems from the obligation that law enforcement, at the outset of a custodial interrogation, convey *Miranda* warnings—a prophylactic requirement designed to safeguard a suspect's Fifth Amendment privilege against self-incrimination—and secure a waiver of those rights. See *Miranda v. Arizona*, 384 U.S. 436, 467 (1966); *Dickerson*, 530 U.S. at 432–35 (recounting the historical development of the *Miranda* rule). A defendant can waive his *Miranda* rights and agree to speak to the authorities as long as the waiver is "the product

of a free and deliberate choice rather than intimidation, coercion, or deception" and is made knowingly and intelligently, "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The second question is broader and asks whether, in the totality of the circumstances, the defendant's statements to authorities were voluntary. See *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) ("[*A*]*ny* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law."). A confession will be deemed involuntary if police obtained the statement through coercive means that overcame the defendant's free will. See *Colorado v. Connelly*, 479 U.S. 157, 164–65 (1986).

These two inquiries are deliberately distinct. Indeed, "*Miranda*'s procedural safeguards exist," the Supreme Court has emphasized, "precisely because the voluntariness test is an inadequate barrier when custodial interrogation is at stake" for ensuring that inculpatory statements admitted as evidence were the product of free choice. *J.D.B. v. North Carolina*, 564 U.S. 261, 281 (2011). Putting these two questions together, "a valid waiver of *Miranda* rights is necessary before a custodial statement may be admitted," but is not sufficient because "a statement may still be found involuntary under the totality of the circumstances even though the waiver was valid." *United States v. LeShore*, 543 F.3d 935, 941 (7th Cir. 2008); see also *Miller v. Fenton*, 474 U.S. 104 (1985) (recognizing that coercive interrogation techniques may have rendered a confession involuntary notwithstanding a valid *Miranda* waiver). Likewise, the failure to comply with *Miranda*'s prescription may require the exclusion of incriminating custodial

statements that are otherwise voluntary. See *Oregon v. Elstad*, 470 U.S. 298, 306–07 (1985). In the end, then, the prosecution must prove *both* a valid *Miranda* waiver *and* the voluntariness of the resulting confession by a preponderance of the evidence. See *Seibert*, 542 U.S. at 608 n.1.

## B

Outland's motion to suppress raised both of these questions. He contended that, given his severe state of drug intoxication upon arriving at the hospital, he was unable to knowingly waive his *Miranda* rights when he agreed to speak with Officer Weiss. Outland separately maintained his subsequent statements were involuntary. To be sure, Outland could have included a more fulsome argument to address how the heroin or hospital-administered medications impacted his ability to understand and waive his *Miranda* rights at the outset of the interview with Officer Weiss. But we are satisfied, and the government agreed at oral argument, that Outland adequately raised challenges before the district court to both the knowing and intelligent nature of his waiver and to the voluntariness of his statements.

On appeal Outland focuses only on the *Miranda* waiver, without renewing the contention that his statements themselves were involuntary. So we focus our review only on the sufficiency of Outland's *Miranda* waiver.

## C

What concerns us is what is missing from the district court's findings. The court's analysis, in a mere three paragraphs, found that Outland's statements over the course of his encounter with Officer Weiss were voluntary and not the

product of police coercion. We have no issue with that finding, and Outland does not press any challenge in that respect.

But nowhere in its order did the district court make any finding as to whether Outland knowingly and intelligently waived his *Miranda* rights before the interview began—a point the government candidly recognized at oral argument. Nothing in the court's order leads us to presume that the court necessarily or implicitly made such a determination. Cf., *e.g.*, *United States v. Combs*, 222 F.3d 353, 362 (7th Cir. 2000) (overlooking the lack of an explicit finding that police read a suspect his *Miranda* rights where such a finding was implicit in the court's order). On the contrary, the district court seemed to assume Outland's intoxication was irrelevant in light of the court's finding of no police coercion—but the mere fact "that a *Miranda* warning was given and the accused made an uncoerced statement" to police "is insufficient to demonstrate a valid waiver of *Miranda* rights." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). "The prosecution must make the additional showing that the accused understood these rights." *Id.*

Remember the events leading to Outland's police interview. He overdosed on heroin, awoke in an emergency room, and lapsed in and out of consciousness as the medical team administered several rounds of drugs. Less than two hours later, Officer Weiss arrived to speak with him. In these circumstances, and given the potential that Outland's mental and physical state may have impacted his comprehension of his *Miranda* rights, the district court's failure to make a finding that Outland's waiver was knowing and intelligent represents a material omission.

The government invites us to overlook the gap. It points to exhibits and portions of testimony from the suppression hearing and specific segments of the interview recording to show that Outland was alert, responsive, coherent, and of sound mind when the colloquy with Officer Weiss began. The totality of circumstances, the government maintains, demonstrates that Outland understood his *Miranda* rights and knowingly waived them—regardless of any heroin or medication in his system.

Maybe. But maybe not. We hesitate because the district court did not make any such determination, and we are reluctant to make this necessary factual finding for the first time on appeal. *Miranda* has been on the books since 1966. But in the subsequent 55 years, we have found not one example, nor has the government identified any, of our court making a finding in the first instance that a defendant knowingly and intelligently waived his rights. For good reason. The "resolution of a motion to suppress is almost always a fact-specific inquiry, and it is the district court which heard the testimony and observed the witnesses at the suppression hearing." *United States v. Terry*, 915 F.3d 1141, 1144 (7th Cir. 2019). Sitting in review as a court of appeals, we lack the benefit of evaluating Outland's credibility and demeanor in person or comparing Outland's testimony against Officer Weiss's version of events. District courts are much better suited to undertake these tasks. "While we largely read briefs for a living, they largely assess the credibility of parties and witnesses for a living." *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2141 (2020) (Roberts, C. J., concurring) (quoting *Taglieri v. Monasky*, 907 F.3d 404, 408 (6th Cir. 2018) (en banc)); see also *DeMarco v. United States*, 415 U.S. 449, 450 n.* (1974) ("[F]actfinding is

the basic responsibility of district courts, rather than appellate courts.").

## D

A suspect's waiver of his *Miranda* rights, and the resulting admissibility of his incriminating statements, often have grave consequences for individual liberty. It is the confluence of two considerations that motivates our concern in this case: the fact pattern involving a hospital-setting interrogation of a recently resuscitated man, and the district court's failure to make any assessment of whether he was capable, in his condition, of knowingly and intelligently waiving his *Miranda* rights. We are reluctant to make the call ourselves or to deem the district court's analysis close enough.

It may be that the totality of the facts demonstrates that Outland understood his rights and the consequences of their abandonment when he agreed to talk to Officer Weiss. But it falls within the district court's competency to make such a determination in the first instance. See *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) ("When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings."). Because the district court did not resolve whether Outland knowingly and intelligently waived his *Miranda* rights, we remand for the limited purpose of allowing the district court to make such a determination. "Absent a compelling reason otherwise, [this] determination[] should be based on the existing record and limited to the testimony and other evidence already presented." *United States v. Fields*, 371 F.3d 910, 917 (7th Cir. 2004).

We therefore REMAND for further proceedings consistent with this opinion.