In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2802

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TYQUELL ALEXANDER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 21 CR 190 — **John J. Tharp**, **Jr.**, *Judge.*

———————————

ARGUED JULY 12, 2023 — DECIDED AUGUST 11, 2023

———————————

Before SYKES, *Chief Judge*, and ROVNER and WOOD, *Circuit Judges*.

ROVNER, *Circuit Judge*. After officers spotted Tyquell Alexander with a gun on surveillance footage, they went to the scene, apprehended and frisked him, and found the gun tucked into his waistband. Alexander, who was charged with possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), moved to suppress the firearm evidence based on lack of probable cause. The district court denied the motion. Because the

officers saw Alexander commit a crime and then behave suspiciously when they arrived on the scene, we affirm.

Late one night in October 2020, ShotSpotter devices[1] alerted the Chicago Police Department to possible gunshots near the 4400 block of West Congress Parkway, on Chicago's west side. Police officers began monitoring the area by remote-controlled surveillance cameras called Police Observation Devices. These cameras, which had been strategically positioned in high-crime locations, enabled police to watch a large group congregating on that block. The monitoring officers saw a man hand a gun to Alexander. Alexander held the gun openly for approximately five seconds before concealing it in his front waistband. The officers who saw the hand-off went to the scene. When they arrived, Alexander turned the opposite direction. He then stepped behind a man standing alongside him and moved toward a metal fence that blocked his path away from the officers. He pushed against the fence but soon his arms were grabbed by the officers, who handcuffed and frisked him. One officer felt an L-shaped object in Alexander's waistband and retrieved a loaded gun. The officers placed Alexander in a police car and transported him to the police station.

Alexander was charged with possessing a firearm after being convicted of a felony. 18 U.S.C. § 922(g)(1). He moved to quash his arrest and suppress the evidence against him,

---

[1] ShotSpotter devices are acoustic sensors that identify and locate noises suggestive of gunshots. "The Chicago Police Department's Use of ShotSpotter Technology," THE CITY OF CHICAGO OFFICE OF INSPECTOR GENERAL, at 4 (Aug. 24, 2021), https://igchicago.org/wp-content/uploads/2021/08/Chicago-Police-Departments-Use-of-ShotSpotter-Technology.pdf (archived **at** https://perma.cc/XG4C-WMKC).

arguing that the officers' knowledge that he possessed a gun before their arrival did not establish probable cause that he committed or was committing a crime. The government responded that the appropriate standard for the investigatory stop was reasonable suspicion—a standard that justified stopping and frisking Alexander based on the ShotSpotter alert, his open possession of a gun, and his evasive actions when the officers arrived.

The district judge denied Alexander's motion. First, the judge considered the nature of Alexander's seizure—whether it was an arrest requiring probable cause or an investigatory stop requiring only reasonable suspicion—and settled upon the former because the officers knew when they frisked Alexander that he possessed a gun. The judge then determined that probable cause existed, not because of Alexander's mere possession of a gun, but for two other reasons. First, the officers saw that Alexander violated the Illinois Firearm Concealed Carry Act, 720 ILCS 5/24-1(a)(10)(iv), when he carried an unconcealed firearm on a public sidewalk. Second, Alexander tried to evade the officers when they arrived on the scene after a suspicious handoff just minutes earlier.

Alexander entered into a conditional plea agreement, *see* FED. R. CRIM. P. 11(a)(2), preserving his right to appeal the ruling on his motion to suppress. The judge sentenced him to five years in prison.

Alexander now appeals the denial of his motion to suppress. As a preliminary matter, it is not obvious at which point Alexander was arrested (i.e., at the time he was seized and handcuffed, or later, when they transported him to the police station) and, relatedly, whether the officers' conduct should be analyzed under a probable cause or reasonable suspicion

standard. But the government contends that the standard is immaterial because the officers "possessed both probable cause (as the district judge concluded) and reasonable suspicion to stop, frisk, and arrest" Alexander. Because the parties and district judge all evaluated whether there was probable cause to arrest Alexander when the officers stopped and frisked him, and probable cause is the more demanding standard, we too analyze whether the officers had probable cause.

A warrantless arrest is valid under the Fourth Amendment only if it is supported by probable cause. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Probable cause exists, in turn, when an objectively reasonable officer—with the same information known by the arresting officer—would believe there is a probability or substantial chance of criminal activity. *Id*. When reviewing the denial of a motion to suppress, we review the judge's legal determination of probable cause de novo and the judge's factual findings for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Key*, 889 F.3d 910, 912 (7th Cir. 2018).

Alexander first argues that the officers lacked probable cause to arrest him because they had no reason to believe that he possessed the gun unlawfully. But this argument misses a more important, broader point. Even if—as Alexander argues—the officers did not know that he had a felony conviction or lacked a concealed-carry license, they had probable cause to believe that he broke Illinois law, that is, the Illinois Firearm Concealed Carry Act. That Act allows a person with a license to carry a firearm on a public street only if it is "completely or mostly concealed from view," 430 ILCS 66/5, 66/10;

*see* 720 ILCS 5/24-1(a)(10)(iv), but here, the officers saw Alexander on surveillance footage openly carry a firearm.

In a related challenge to the judge's probable-cause ruling, Alexander argues that his "subtle and limited movements" in the face of the officers' approach—when he merely "turned his body" and "moved along the fence"—did not give the officers reason to believe that his gun possession was unlawful. True, such behavior alone seems unremarkable for purposes of probable cause. *See United States v. Williams*, 731 F.3d 678, 687 (7th Cir. 2013) ("Most people, when confronted by a police officer, are likely to act nervous, avoid eye contact, and even potentially shift their bodies as if to move away from the area … ."). But Alexander's focus is again too narrow—his behavior after the officers' arrival represented only one data point among the totality of circumstances that could establish probable cause. In *United States v. Richmond*, 924 F.3d 404 (7th Cir. 2019), cited by the government, we concluded that officers had reasonable suspicion that the defendant committed a crime based on a "significant bulge" in his shirt pocket, his abrupt change of direction and "quickened…pace" upon their approach, and his placement of an unidentifiable object on the threshold of his front door. *Id.* at 408-09. A similar set of circumstances was present here: objectively reasonable officers could infer criminal activity from their knowledge that he possessed a gun (which is undisputed), and his furtive movements upon their approach. *See also United States v. Adair*, 925 F.3d 931, 934, 938 (7th Cir. 2019) (officers had reasonable suspicion in part because defendant tried to evade officer by weaving through crowd).

For these reasons, we AFFIRM the district judge's denial of Alexander's motion to suppress evidence.