In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 22-1967

SHELLIE ELLISON,

*Plaintiff-Appellant,*

*v.*

UNITED STATES POSTAL SERVICE,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-00953-RLY-MPB — **Richard L. Young**, *Judge.*

———————————

ARGUED MARCH 27, 2023 — DECIDED OCTOBER 24, 2023

———————————

Before HAMILTON, SCUDDER, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Section 504 of the Rehabilitation Act
makes it unlawful for the United States Postal Service to ex-
clude a person with a disability from its program solely be-
cause of that person's disability. 29 U.S.C. § 794(a). One of the
central purposes of the legislation was removing "shameful
oversights" that caused people with disabilities to "live
among society 'shunted aside, hidden, and ignored.'"

*Alexander v. Choate*, 469 U.S. 287, 295–96 (1985) (quoting 117 CONG. REC. 45974 (1971)).

Shellie Ellison is a person with a disability who uses a wheelchair. She desires to visit her local post office but cannot because the United States Postal Service refuses to build a wheelchair ramp. Ellison sued the Postal Service under Section 504 of the Rehabilitation Act seeking an injunction. The district court entered summary judgment for the Postal Service, concluding that the Postal Service need not install a ramp at the inaccessible location because Ellison could meaningfully access the program through its website and three wheelchair-accessible Postal Service locations within a fifteen-minute drive of her home.

On appeal, Ellison maintains that the district court erred because the record shows that she lacks meaningful access to the Postal Service's program through these alternative methods. We agree. We therefore vacate and remand for the district court to consider whether Ellison's proposed accommodation is reasonable.

## I. BACKGROUND

### A. Factual History

The Shelbyville Post Office is both the closest one to Ellison's home and the largest in that area of Indiana. When a customer enters this location, she will find employees ready to assist—by offering advice about shipping options or by assembling and weighing packages for the customer. The customer will then find a fully stocked retail lobby, where she can buy anything from shipping supplies, such as packaging and stamps, to gift cards. The Shelbyville location is also where Ellison keeps a P.O. box for her non-profit, Wheels on

the Ground—an organization striving to educate the public about accessibility for people with disabilities. Despite all this, Ellison cannot enter the Shelbyville Post Office because it has only one customer entrance: at the top of its front steps.

Given that Ellison cannot enter the building, three potential accommodations exist for her.[1] She can (1) ask for help from the loading dock of the Shelbyville Post Office or from a van-accessible parking space, (2) use the Postal Service's website, or (3) visit wheelchair-accessible locations in surrounding towns. We cover each of these accommodations in turn.

### 1. The Shelbyville Post Office's Loading Dock Area

For a while, the Postal Service directed Ellison to the Shelbyville Post Office's loading dock. Once there, she would make her way up a ramp and push the call button. If an employee responded—something that did not always happen—the employee would not let Ellison in through the back door. Instead, Ellison would have to wait outside on the loading dock while the employee traveled back and forth between the inside of the building and the dock to carry out her requests.

Ellison eventually grew frustrated with this setup. She complained to the United States Access Board, which concluded that, because of the age of the Shelbyville Post Office, it could not require the Postal Service to alter the front entrance. The Postal Service opted not to install a ramp on its own, either. Instead, it spent around $60,000 renovating the area around the loading dock. This money yielded a van-accessible parking space, a call button in that space, and a less

---

[1] As we explain later, the Rehabilitation Act does not ensure that people with disabilities can access each facility housing an agency's program, but it does ensure that they can access the program as a whole.

steep loading ramp. But delivery trucks often blocked the parking space, meaning Ellison still had to stay outside while waiting for an employee to help her. The Postal Service also offered to deliver the mail from Ellison's P.O. box to her home. Ellison, however, preferred to keep the mail delivered to her P.O. box separate from her personal mail so that executives in her non-profit could easily collect documents they needed.

Others were dissatisfied with these means of accessing the Postal Service's program too. After a slew of complaints, the City of Shelbyville offered to pay for a ramp at the Shelbyville Post Office's front entrance. The Postal Service declined, citing a policy of refusing donations for exterior physical improvements.

### 2. The Postal Service's Website

The Postal Service has also pointed Ellison to its website. From there, customers can pick between several forms of shipping, schedule an at-home pickup, and purchase various retail goods. That said, according to the website, ground shipping—the cheapest shipping option for packages weighing more than about a pound—is not available online; shipping materials can take over a week to arrive; some products come with delivery fees; and customers cannot receive hands-on assistance online.

### 3. Alternative, Accessible Postal Service Locations

The Postal Service also offers three smaller but wheelchair-accessible post offices in rural areas surrounding Shelbyville that Ellison can visit. They take her longer to reach—eleven, thirteen, and fifteen minutes by car, as opposed to the seven minutes it takes her to drive to the Shelbyville Post

Office. In addition, their storefronts are open for fewer hours—about twenty-two, thirty-two, and forty-one hours per week, as opposed to the forty-nine hours a week the Shelbyville Post Office is open. The record does not reveal which services the wheelchair-accessible locations offer or whether these alternative locations provide the same assistance to customers as the Shelbyville Post Office.

Finding these options unsatisfactory, Ellison now visits a wheelchair-accessible private shipping company, where she must pay three times as much for the same services offered at the Postal Service.

### B. Procedural History

Ellison sued the Postal Service, alleging that it failed to provide her with meaningful access to its program in violation of Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794. In her view, the Postal Service's accommodations and recommendations did not make her access meaningful even when combined. By way of a remedy, she sought an injunction requiring the Postal Service to build a wheelchair ramp at the front of the Shelbyville Post Office. Both parties eventually moved for summary judgment.

After Ellison moved for summary judgment, the Postal Service filed a cross motion for summary judgment pointing for the first time to three wheelchair-accessible post offices. These locations along with the website, it asserted, provided Ellison with meaningful access to the Postal Service's program. In support, the Postal Service submitted evidence showing that the alternative locations were wheelchair accessible and had P.O. boxes. It did not, however, detail which services each of these alternative locations offered.

After briefing closed, the district court, to its credit, conducted a status hearing to obtain more information on the wheelchair-accessible post offices. At the hearing, it asked the parties to submit a joint stipulation on how far the alternative locations were from Ellison's house. The court also asked one of Ellison's attorneys during the hearing whether the retail offerings at the alternative post offices were comparable to those at the Shelbyville Post Office. She answered to the best of her recollection.

Soon after, the parties submitted the joint declaration on the distance of the alternative locations. The same day, Ellison moved to file a supplemental declaration expanding on the retail products sold at those post offices. The proposed affidavit explained that the alternative locations lacked shipping materials and carried either no retail items or fewer retail items than the Shelbyville location; it said nothing about the customer services each provides.

The district court granted the Postal Service's motion for summary judgment and denied Ellison's. It concluded that, although the loading dock of the Shelbyville location did not furnish meaningful access, the totality of the other services did. Through the website and the other nearby locations, the court explained, Ellison could obtain the benefits of the Postal Service's program. In making this ruling, the court denied Ellison's motion to file the supplemental declaration as moot, reasoning that she could buy any retail items not sold at the alternative locations on the website.

Because the court concluded that Ellison had meaningful access to the Postal Service, it did not move to the second part of the analysis and consider whether her proposed accommodation was reasonable. Ellison now appeals, arguing that the

district court should have entered summary judgment in her favor.

## II. DISCUSSION

We review a district court's summary judgment decision de novo, meaning we take a fresh look at the issues. *Groves v. S. Bend Cmty. Sch. Corp.*, 51 F.4th 766, 769 (7th Cir. 2022). When both parties move for summary judgment, we take the motions one at a time, viewing the facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was made. *N.J. ex rel. Jacob v. Sonnabend*, 37 F.4th 412, 420 (7th Cir. 2022). Summary judgment, in turn, is warranted when no material fact is in genuine dispute and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when, based on the evidence, a jury could find for the non-moving party. *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022).

### A. Legal Background

Section 504 of the Rehabilitation Act[2] prevents the Postal Service from excluding people from its program solely because of their disabilities. That prohibition reads:

> No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity …

---

[2] Congress passed the Rehabilitation Act to ensure that, no matter how old and inaccessible some of a federal agencies' facilities may be, people with disabilities are still granted access to the agency's services.

conducted … by the United States Postal Service.

29 U.S.C. § 794(a). The Act defines "program or activity" as "all of the operations of" the agency. *Id.* § 794(b)(1)(A).

By its terms, then, Section 504 limits its coverage to the Postal Service's program. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 604 (1986). The statute, therefore, does not necessarily guarantee access to all facilities housing this program.

Sometimes Congress compromises. It did so when deciding whether the Postal Service must make each of its buildings accessible to people with disabilities. The dividing line on which Congress settled was the age of the building.

Under the Architectural Barriers Act of 1968, the Postal Service must make any building it constructs or alters after that year readily accessible to people with disabilities. 42 U.S.C. §§ 4151, 4154a, 4155. Different rules apply to structures built or last modified before 1968. Those structures are covered only by the more general prohibition on disability discrimination passed five years later in Section 504 of the Rehabilitation Act. Here, the parties agree that the Shelbyville Post Office was constructed before 1968 and has not been modified since, meaning the Rehabilitation Act is the only applicable statute.

The Rehabilitation Act's focus on "program accessibility" rather than "facilities accessibility" ensures access to the benefits of the Postal Service while giving the agency flexibility in deciding how to make those benefits available. *See Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014) (concluding the same with respect to a similarly worded

provision in the Americans with Disabilities Act); *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000) (same).[3] In light of that flexibility, the Supreme Court has instructed this court to balance two competing considerations when interpreting Section 504: "the need to give effect to the statutory objectives" and "the desire to keep [the statute] within manageable bounds." *Choate*, 469 U.S. at 299.

Recognizing the tension between those goals, regulations interpreting the Rehabilitation Act provide additional guidance.[4] Under these regulations, the Postal Service is required to operate its program so that each part, viewed in its entirety, is "readily accessible." 45 C.F.R. § 84.22(a). Therefore, the Postal Service must alter existing facilities only if other methods do not make the program readily accessible to people with disabilities. *Id.* § 84.22(b).

In turn, a plaintiff suing under Section 504 of the Rehabilitation Act must show that: (1) she is a person with a disability, (2) she is qualified to participate in the relevant program, and (3) the defendant excluded her from or denied her the benefit of that program because of her disability. *Khan v. Midwestern Univ.*, 879 F.3d 838, 843 (7th Cir. 2018), *as amended on denial of reh'g* (Feb. 26, 2018). To establish causation, a plaintiff need not prove intentional discrimination. She may alternatively show that the defendant disparately impacted people

---

[3] We often draw on the ADA in Rehabilitation Act cases because the two statutes and their implementing regulations are nearly identical. *A.H. ex rel. Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018).

[4] The Supreme Court has explained that these regulations serve as an "important source of guidance on the meaning of § 504." *Choate*, 469 U.S. at 304 n.24.

with disabilities or refused her a reasonable accommodation. *A.H. ex rel. Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592–93 (7th Cir. 2018). Under the reasonable accommodation theory, the plaintiff must also show that her proposed accommodation is indeed reasonable. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002) (applying a burden-shifting framework to evaluate the reasonableness of a requested accommodation under the ADA).

Here, the first two elements are undisputed, but the parties disagree on the third element: whether the Postal Service denied Ellison the benefit of its program. Before reaching the merits, we elaborate on what it means to deny someone the benefit of a program under the Rehabilitation Act.

### 1. Defining the Program

First, we must map out the contours of the program in question. As discussed, the Rehabilitation Act defines the Postal Service's program in a broad way—as "all of [its] operations." 29 U.S.C. § 794(b)(1)(A). The statute establishing the Postal Service, however, provides a clearer window into its purpose. According to that statute, the Postal Service's "basic function" is facilitating "correspondence of the people." 39 U.S.C. § 101(a).

This goal is accomplished by providing "adequate and efficient postal services at fair and reasonable rates and fees." *Id.* § 403(a). The phrase "postal service," in turn, is defined as the "delivery of letters" and "packages," *and* "other functions ancillary" to mailing letters and packages. *Id.* § 102(5).[5] Even

---

[5] The fact that the Postal Service's program involves both mailing and functions related to mailing is endorsed by the Postal Service's brief in this

functions "incidental" to sending mail are part of the "[g]eneral duties" of the Postal Service. *Id.* § 403(a).[6]

Against this backdrop, we understand that the core benefits of the Postal Service's program are services necessary to sending and receiving mail, including P.O. boxes, the availability of employees to help assemble and weigh packages, and the ability to purchase critical shipping supplies such as stamps, envelopes, and boxes.

### 2. Meaningful Access

Second, after we define the parameters of the program in question, the Supreme Court has directed us to assess whether the agency in question provides "meaningful access" to that program. *Choate*, 469 U.S. at 300–01. As for what constitutes "meaningful access," the inquiry is whether people with disabilities have an "equal opportunity to … gain the same benefit" from the program as people without disabilities. *Id.* at 305 (quoting 45 C.F.R. § 84.4(b)(2) (1984)); *see also Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 199–201 (2d Cir. 2014) (concluding that blind voters lacked meaningful access to the program of voting because accommodations did not allow them to cast ballots in private, which was core to the voting program). That said, the services

---

case, which defines the "program as a whole" as "various mailing and other services, including in-person experiences" and defines the "Postal Service" as "the provision of mailing services and other associated activities." App. Dkt. 24 at 13, 17–18.

[6] In another case, the Postal Service argued that ReadyPost mailers, greeting cards, and even bubble wrap were "postal services" as opposed to "nonpostal services" under 39 U.S.C. § 102(5). *LePage's 2000, Inc. v. Postal Regul. Comm'n*, 642 F.3d 225, 231–32 (D.C. Cir. 2011).

furnished to each group need only be equivalent, not identical. *Choate*, 469 U.S. at 305 n.26; *see also Kirola v. City & County of San Francisco*, 860 F.3d 1164, 1184 (9th Cir. 2017) (concluding that plaintiffs had meaningful access to a park system even though they could not enter certain parks).

The Supreme Court has explained that if a plaintiff cannot enjoy a program's fundamental benefits, her access is unlikely to be meaningful. *See Choate*, 469 U.S. at 302 (considering whether the limitation denied "the benefits … the State has chosen to provide"); *Daubert*, 760 F.3d at 987–88 (distinguishing experiences that are "incidental" to government functions from the functions themselves). Conversely, the inability to make use of a minor benefit—at least standing alone—will struggle to move the meaningful-access needle very far. This concept is embedded within the word "meaningful": the smaller a benefit is, the less significance it has on a plaintiff's access to the program as a whole.

To put this all together, the idea of meaningful access might permit small differences between the experiences of people with and without disabilities. The applicable standard is not "perfect accessibility." *Kirola*, 860 F.3d at 1184. At the same time, a plaintiff need not show that she has been completely deprived of access to prevail. *See Disabled in Action*, 752 F.3d at 198 (concluding the same); *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (concluding the same with respect to the ADA).

**B. Ellison's Access to the Postal Service's Program**

With these guideposts in mind, we pivot to the merits and ask whether the Postal Service could avoid making structural

changes to the Shelbyville Post Office because other methods allow Ellison to adequately access its program.

Ellison argues that the only way she can meaningfully access the Postal Service's program is by entering the Shelbyville Post Office. In her view, the alternatives—the Shelbyville Post Office's loading dock, the Postal Service's website, and the accessible locations—don't provide her with a meaningful level of access to the Postal Service's program. The Postal Service responds that a patchwork of these alternatives produces meaningful access, negating the need for a ramp.

We evaluate Ellison's options in turn to determine whether they, alone or in combination, provide meaningful access.

### 1. The Shelbyville Post Office's Loading Dock

To start, we agree with Ellison that the Shelbyville Post Office's loading dock area does not supply meaningful access to the Postal Service's program. Even after the modifications to the van-accessible parking space, Ellison has repeatedly been denied access to benefits of the Postal Service's program. As noted, delivery trucks often blocked the parking space and postal employees often ignored her calls.

### 2. Website

The website alone also does not offer meaningful access. To be sure, we recognize that it seems to at first blush because Ellison can order some products and services online.

Once we dig deeper, however, problems arise. To start, the cheapest shipping option for packages weighing more than about a pound is not available on the website. In addition, the

website forces users to pay shipping and handling fees that they would not incur in person. Customers must also wait—sometimes more than a week—for goods, including packaging materials, to arrive. Once items do arrive, no one is there to assist the customer with tasks essential to packaging and mailing. A customer cannot, for example, ask anyone to help her assemble, weigh, or tape a package.[7] The website thus requires people with disabilities to wait longer, pay more, and receive less assistance than someone without a disability.

A larger concern is at play as well. If brick-and-mortar establishments could use websites alone as an excuse to forgo physical accommodations, they could relegate people with disabilities to a digital world. This could in essence undermine the purpose of the Rehabilitation Act. *See Choate*, 469 U.S. at 295–96 (explaining that Congress passed the statute to prevent people with disabilities from "liv[ing] among society 'shunted aside, hidden, and ignored'") (quoting 117 CONG. REC. 45974 (1971)).

Recognizing that forcing Ellison to rely exclusively on the website would undermine the statute's purpose, the Postal Service points out that the website merely factors into the meaningful-access equation, and that the Rehabilitation Act allows it to combine accommodations that together create meaningful access. We agree that the website could play a role at the margins to supplement other means of access, if those other means provided significant levels of access on their own. Because the accommodations, as noted above, at the

---

[7] The Postal Service maintains a help line where customers can ask questions, but a customer using the website would not receive physical assistance.

Shelbyville Post Office do not provide a significant level of access, we must ask whether the three wheelchair-accessible locations do so.

### 3. *Alternative Locations*

Dotted on the outskirts of Shelbyville are three wheelchair-accessible post offices relatively close to Ellison's house. Through these locations, one can assume Ellison has some access to the Postal Service's program. The question is whether this access is meaningful. The Postal Service tells us that the services at the alternative locations are comparable to those at the Shelbyville Post Office. According to the Postal Service, Ellison can still make use of the full range of the Postal Service's benefits, interact with employees, and ask for physical assistance.

The record does not support any of these claims. In essence, all we know from the record is that the alternative post offices have P.O. boxes and are further away and open for fewer hours than the Shelbyville Post Office.

The Postal Service's lack of evidence on the alternative locations is fatal to its argument. In moving for summary judgment, the Postal Service had to either point out that an essential element of Ellison's claim lacked evidence or present evidence of its own that negated an essential element of her claim. *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). Conversely, in opposing Ellison's motion for summary judgment, the Postal Service had to show that a reasonable jury would not be required to find for her based on the record. *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022). In addition, summary judgment is the proverbial "put up or shut up" moment in a lawsuit, when a party

must reveal what evidence it has to convince a jury. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022). This means that a party may not manufacture a genuine issue of material fact by speculating about evidence not in the record. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021). These principles are critical to our evaluation of both the Postal Service's response to Ellison's motion for summary judgment and to its own cross motion.

When Ellison moved for summary judgment, she established that the options available to her were insufficient to give her meaningful access to the Postal Service program. The Postal Service had the burden of showing why this was not the case—both in opposing Ellison's motion and in making its own motion. In attempting to do so, the Postal Service identified for the first time three alternative post offices. No doubt, under the Rehabilitation Act, alternative facilities can supply meaningful access. But the Postal Service had to do more than tell the district court that these facilities existed. To prove that the other locations along with the website gave Ellison meaningful access, or to create a factual dispute on that point, the Postal Service needed to show that the services and products offered at the alternative locations allowed Ellison to have meaningful access to the Postal Service program when viewed as a whole.

Given that "we can look at the facts only with as much specificity as the summary judgment record allows," *Strand v. Minchuk*, 910 F.3d 909, 917 (7th Cir. 2018), we conclude that the district court should not have entered summary judgment

for the Postal Service.[8] A reasonable jury looking at this record—which shows why the Shelbyville Post Office and website were insufficient yet contains no information about the services provided at the alternative post offices—would have to conclude that Ellison lacked meaningful access to the Postal Service's program. The only way a jury could find for the Postal Service on this question would be by impermissibly speculating about what lies inside the wheelchair-accessible post offices. *Khungar*, 985 F.3d at 573.

Ellison therefore showed that without an accommodation she lacks meaningful access to the Postal Service's program.

**B. The Reasonableness of Ellison's Proposed Accommodation.**

Before we can determine whether the district court should have granted summary judgment to Ellison, we must consider whether her proposed accommodation is reasonable.

To meet her initial burden at this stage, Ellison needed only to suggest an accommodation that seemed reasonable on its face. *See Barnett*, 535 U.S. at 401–02. We think that her proposed accommodation—a ramp or other means for her to enter the Shelbyville Post Office—cleared this low bar. The Postal Service then had to show that, in reality, the proposed accommodation is not reasonable or would impose an undue

---

[8] Ellison also contends that the district court should have considered her affidavit on the lack of retail products sold at the alternative locations. Because we have determined that summary judgment for the government was improper regardless of the affidavit, we need not reach this argument.

hardship.[9] *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002). The problem is that the Postal Service has claimed work-product privilege over its calculations on the cost of a ramp.

Because the district court did not reach this fact-sensitive question, and we prefer to let district courts make factual findings in the first instance, *United States v. Outland*, 993 F.3d 1017, 1023 (7th Cir. 2021), we remand for further proceedings to determine if the proposed accommodation is reasonable. We leave it up to the sound discretion of the district court to determine whether to resolve this issue through further summary judgment proceedings or through trial.

### III. CONCLUSION

In sum, Ellison showed that she lacks meaningful access to the Postal Service's program without an accommodation. We therefore VACATE the grant of summary judgment in favor of the Postal Service and REMAND for further proceedings on whether Ellison's proposed accommodation is reasonable.

---

[9] Ellison argues that this defense is an affirmative one and that the Postal Service forfeited it by not asserting it in the answer. We need not decide whether the Postal Service's argument amounts to an affirmative defense or whether the Postal Service forfeited it. Failing to plead an affirmative defense typically results in forfeiture only if the delay harmed the plaintiff, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019), and Ellison has not argued that the delay harmed her or told us why the general rule does not apply.

HAMILTON, *Circuit Judge*, concurring. I join Judge Pryor's opinion for the court. I write separately to note that I would be willing to go further and reject on broader grounds the Postal Service's theory that it "accommodated" plaintiff Ellison by sending her to other post offices in other towns. Judge Pryor's opinion explains persuasively that sending the plaintiff to wait outside at the back door of the Shelbyville Post Office, hoping the ramp would not be blocked and that an employee would come to the door and help her, did not offer Ellison "meaningful access" to the Postal Service's programs. Nor did leaving plaintiff to shop on the website for slow and incomplete access to products and services. The court's opinion also explains persuasively how the Postal Service failed to show in the district court that other post offices in other towns offered Ellison meaningful access.

At a more fundamental level, though, the Postal Service should not be allowed to refuse to make the Shelbyville Post Office itself wheelchair accessible, regardless of the precise offerings and hours of the other post offices. The federal government itself reports that nearly one in eight American adults cannot manage to go up and down stairs. Centers for Disease Control, *Disability Impacts All of Us*, https://www.cdc.gov/ncbddd/disabilityandhealth/infographic-disability-impacts-all.html (last visited Oct. 22, 2023) (12.1% of adults in the U.S. have "serious difficulty walking or climbing stairs).

It's 2023, for heaven's sake. The Rehabilitation Act was enacted 49 years ago. The Americans with Disabilities Act was enacted more than 30 years ago. One would be hard pressed to find any institution other than the Postal Service that would

even dare make the arguments the defense has made in this case.

Imagine a fast-food chain with an inaccessible restaurant telling wheelchair-bound customers they should be satisfied driving to another restaurant across town, or to the next town over, or even to the next county. Or suppose *one of the Postal Service's competitors*—FedEx or UPS or DHL—operated an inaccessible facility. Imagine they told wheelchair-bound customers, or even the United States Attorney, that it's sufficient that another wheelchair-accessible facility is located in the next town over. Those defenses would be laughed out of court these days. And ironically, a federal enforcement action against that hypothetical fast-food chain or Postal Service competitor would be brought by the same United States Attorney's Office defending the Postal Service's refusal to build a ramp in this case.

All members of the panel agree that plaintiff met her burden of proposing an apparently reasonable accommodation— installing a ramp at the Shelbyville Post Office. *Ante* at 17. That shifted the burden to the Postal Service to show that plaintiff's proposed accommodation is not reasonable. There are at least three major problems with the Postal Service's objections to plaintiff's proposal. First, safe ramps for wheelchairs are surely the most common, ordinary, and visible accommodation required under the Rehabilitation Act (as well as the Americans with Disabilities Act). See *Disabled in Action v. Board of Elections*, 752 F.3d 189, 201 (2d Cir. 2014) (ordering broad injunctive relief to make all polling places in New York City accessible). Plaintiff seeks a perfectly ordinary accommodation.

Second, in this case, the record shows that the Postal Service has studied the costs of building a ramp. But it has refused to disclose the cost estimate to plaintiff or the court, claiming attorney work-product privilege. Whether that privilege claim is valid or not, the Postal Service simply has not offered evidence that a ramp would be unreasonable. We could just as well order summary judgment in favor of plaintiff on this point rather than order further proceedings on remand.

Third, at the risk of stating the obvious, the proposed ramp will benefit not just plaintiff Ellison, but thousands of other residents of Shelby County who would like to use the Shelbyville Post Office but cannot cope with its inaccessible entrance. These broader benefits need to be part of any calculation of reasonableness.

I recognize that the standard is not "perfect accessibility." *Kirola v. City and County of San Francisco*, 860 F.3d 1164, 1184 (9th Cir. 2017); *Disabled in Action*, 752 F.3d at 198–99. But the specific context is important. In *Kirola*, for example, the plaintiffs were seeking complete access to all parks in San Francisco. Not all obstacles to wheelchair access could be eliminated without changing the nature of the parks (although there was apparently plenty of room for reasonable improvements). A local post office is inarguably very different from an entire parks system. This self-evident difference explains why ordering the Postal Service to build a ramp at the Shelbyville Post Office would not inexorably require the National Park Service to build ramps throughout the Grand Canyon. More pointedly, as the Second Circuit wrote in *Disabled in Action*: "It is not enough to open the door for the handicapped …; a ramp must be built so the door can be reached." 752 F.3d

at 200, quoting with approval *Dopico v. Goldschmidt*, 687 F.2d 644, 652 (2d Cir. 1982), in turn quoting with approval plaintiffs' brief.

Just so, and that was more than forty years ago. In 2023, the refusal to make a post office wheelchair-accessible should be deemed "discrimination" under the Rehabilitation Act without further ado.