In the

# United States Court of Appeals
## for the Seventh Circuit

_____

No. 23-2258

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY BAILEY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin
No. 22-cr-00068 — **William M. Conley**, *Judge.*

_____

ARGUED APRIL 18, 2024 — DECIDED DECEMBER 2, 2024

_____

Before SYKES, *Chief Judge*, and BRENNAN and SCUDDER, *Circuit Judges*.

SYKES, *Chief Judge*. Late one February night, police officers in Fitchburg, Wisconsin, were dispatched to the scene of a large house party to investigate a noise complaint. Sergeant Dan Varriale was the first to arrive. He parked down the block and approached the house on foot. As he did so, he saw two people in front of the house pushing and shoving each other.

He sprinted toward them and saw that it was a man and a woman who were fighting.

The scuffle continued, and Sergeant Varriale eventually separated the two with assistance from other officers. The sergeant then handcuffed the man, identified as Anthony Bailey, and began walking with him back to his squad car. As they reached the squad, the sergeant asked Bailey if he was carrying any weapons. After a brief pause, Bailey admitted that he had a gun hidden in his pants. Sergeant Varriale confiscated the gun—a .40 caliber Glock—and Bailey was charged with unlawfully possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1).

Bailey moved to suppress the gun, arguing that his arrest was not supported by probable cause. After an evidentiary hearing, a magistrate judge found Sergeant Varriale's testimony credible and concluded that he had probable cause to arrest Bailey under Wisconsin's disorderly conduct statute. The district judge adopted the magistrate judge's findings and conclusions and denied the suppression motion. Bailey entered a conditional guilty plea, reserving the right to challenge that decision.

On appeal Bailey asks us to set aside the magistrate judge's decision to credit Sergeant Varriale's testimony about the fight. That's an uphill battle. Credibility determinations receive special deference and are rarely overturned. Bailey insists that Sergeant Varriale's body-camera video contradicts his testimony. Not so. We affirm the judgment.

## I. Background

Around midnight on February 6, 2022, neighbors complained to police about a boisterous house party at 5221 Day

Lily Place, located in a quiet residential neighborhood in Fitchburg. Callers complained about the noise and said the partygoers were consuming alcohol and marijuana. Sergeant Varriale, who was familiar with the house from previous noise-disturbance complaints, responded to the scene. He parked his squad car about a half block from the house and began walking down the street with his body camera activated. As he got closer, he heard loud shouting and saw two people "tussling" outside near the sidewalk. They were pushing and grabbing at each other. As the sergeant picked up his pace, he saw one of them fall into the snow and get up again. The skirmish continued. The sergeant radioed for backup, reported that a fight was in progress, and sprinted towards the fracas.

As he closed in on the pair, Sergeant Varriale noticed that the fight was between a man and a woman, and he saw the woman hit the man in the head. He ordered them to "knock it off" and get on the ground. Although they stopped fighting, neither complied with his order to get on the ground. Concerned that the ruckus might reignite, the sergeant tried to get between the two and handcuff the man. The woman stepped between them and continued shouting. Backup arrived, and other officers intervened to subdue the woman while Sergeant Varriale handcuffed the man.

The combatants were identified as Anthony Bailey and Tiffany Smith. After handcuffing Bailey, Sergeant Varriale walked with him back to his squad car. As they approached the squad, the sergeant asked Bailey "do you have any weapons on you or anything like that … no guns or knives?" Bailey did not respond. Sergeant Varriale asked again, and at first Bailey said "no," but after a few more steps toward the squad,

he said "I got a gun in my drawers." Bailey pointed to the location of the gun. At Sergeant Varriale's direction, he unbuttoned his pants so the officer could confiscate the firearm. Sergeant Varriale recovered a .40 caliber Glock handgun.

Because Bailey has several felony convictions, he is prohibited from possessing firearms. A grand jury returned a one-count indictment charging him with possessing a firearm as a felon in violation of § 922(g)(1). He moved to suppress the firearm, claiming that Sergeant Varriale lacked probable cause to arrest him. He maintained that he wasn't shouting or fighting; that it was Smith who hit him (not vice versa); and that they stopped arguing when the sergeant told them to knock it off.

A magistrate judge held an evidentiary hearing on the motion. The government called Sergeant Varriale as a witness and also introduced his body-camera video. The sergeant testified to the facts as we've just described them. The body-cam video does not show the fight itself because Sergeant Varriale was too far away to bring Bailey and Smith into the camera's lens. But the recording captured Sergeant Varriale sprinting toward the scene just moments after he began walking up the street. As he ran, the recording reflects that he notified other officers over his radio that a fight was in progress. Smith and Bailey come into view as the sergeant arrived at their location. The recording continues from there, capturing what happened next.

The magistrate judge found Sergeant Varriale's testimony credible and noted that the video evidence generally corroborated his account. He also concluded that the fight in the street between Bailey and Smith established probable cause to arrest Bailey under Wisconsin's disorderly conduct statute,

which criminalizes a broad range of conduct that tends to cause a disturbance. *See* WIS. STAT. § 947.01(1) (2022). The magistrate judge recommended that the district judge deny the suppression motion.

Bailey objected, challenging the magistrate judge's decision to credit Sergeant Varriale's testimony. He claimed that the body-camera footage contradicted the sergeant's account. More specifically, he noted that the body-cam recording does not show snow or a wet spot on either Smith's or Bailey's clothing even though Sergeant Varriale testified that one of them fell into the snow during the fight. The magistrate judge rejected this argument, finding it unremarkable that the video did not show snow or wetness on Smith's or Bailey's clothing—or at least that the ambiguity was not significant enough to undermine Sergeant Varriale's credibility. The district judge agreed and adopted the magistrate judge's findings and conclusions. And because the evidence established probable cause to arrest Bailey for disorderly conduct, the judge denied the suppression motion.

Bailey entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress the gun. This appeal followed.

## II. Discussion

"We review a district court's denial of a motion to suppress under a dual standard, assessing conclusions of law *de novo* and evaluating factual findings for clear error with special deference granted to the court's credibility determinations." *United States v. Outland*, 993 F.3d 1017, 1021 (7th Cir. 2021). Applying this deferential standard of review for credibility determinations, "we accept the district court's findings

as true, unless the facts, as testified to by the police officers, are so unbelievable that no reasonable factfinder could credit them." *United States v. Avila*, 106 F.4th 684, 694 (7th Cir. 2024). "This deference is equally applicable where credibility determinations have been made by a magistrate judge and the report and recommendation of the magistrate judge have been adopted by the district court." *United States v. Gillaum*, 372 F.3d 848, 854 (7th Cir. 2004).

Recognizing the deferential standard of review, Bailey rests his argument on the body-cam video, as he did in the district court. He invokes the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007). *Scott* involved a suit for damages under 42 U.S.C. § 1983 by a fleeing suspect who was injured in a high-speed police chase; the injured suspect sued the pursuing officers alleging that their conduct during the chase amounted to excessive force in violation of the Fourth Amendment. *Id.* at 375–76. Based on the plaintiff's version of events, the court of appeals affirmed the district court's decision that material factual disputes precluded summary judgment. *Id.* at 376. But the chase was captured on video, and the Court said the recording so "clearly contradict[ed]" and "utterly discredit[ed]" the plaintiff's story that the court of appeals "should not have relied on such visible fiction; it should have viewed the facts in the light depicted in the videotape." *Id.* at 378, 380–81.

*Scott* does not help Bailey. Far from contradicting Sergeant Varriale's testimony, the body-cam video corroborates it. The video shows Sergeant Varriale breaking into a sprint soon after stepping out of his squad car. As he ran towards the scene of the altercation, he is heard reporting over his radio that a fight was in progress, and there are sounds of shouting in the

background. After the arrest, as Sergeant Varriale walked Bailey to the squad car, he told him that he saw him physically fighting with Smith.

Ignoring all this, Bailey insists that we should disregard Sergeant Varriale's testimony because the video shows no snow or wet spot on either his or Smith's clothing. This, he claims, undercuts Sergeant Varriale's testimony that he saw one of them fall into the snow while he ran towards the fight. This argument is meritless. The encounter took place in the middle of the night, in a dark and not well-lit street, and the recording is low quality and grainy. It does not show Smith or Bailey from all angles. Because Smith wore white shoes and white pants, it would be hard to spot white snow on her clothing under even better conditions. And for all we know, either one of them could have had snow or wetness on a part of their clothing that cannot be seen on the video. *See United States v. Yang*, 39 F.4th 893, 900 (7th Cir. 2022) (rejecting the defendant's argument that dashcam video of a traffic stop defeated the officer's testimony that a traffic violation occurred because the video was poor quality and did not clearly depict the events). Moreover, and as the magistrate judge sensibly concluded, the absence of video evidence showing snowy clothing is not so significant that it calls into question the credibility of Sergeant Varriale's testimony.

In short, there is no basis to disturb the magistrate judge's decision to credit Sergeant Varriale's testimony. That makes the probable-cause analysis simple. "Probable cause exists ... when an objectively reasonable officer—with the same information known by the arresting officer—would believe there is a probability or substantial chance of criminal activity." *United States v. Alexander*, 78 F.4th 346, 348 (7th Cir. 2023). The

Wisconsin disorderly conduct statute makes it a crime to "engage[] in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance." § 947.01(1). This broad statute "captures '*any* type of conduct that is disorderly.'" *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1043 (7th Cir. 2023) (quoting *Doubek v. Kaul*, 973 N.W.2d 756, 760 (Wis. 2022)). An officer who observes a person physically fighting with another in the street, as Sergeant Varriale did, has probable cause to make an arrest under this statute.[1]

AFFIRMED

---

[1] In a new argument on appeal, Bailey suggests that his conduct wasn't prosecutable under Wisconsin's disorderly-conduct statute because the video evidence does not show that he was unreasonably loud. He styles this as a First Amendment argument. However styled, the argument is frivolous. Bailey wasn't arrested because he was loud. He was arrested because he and Smith were engaged in a physical fight.